OPINION
On April 1, 1994, Terry Bowshier and Yvonne Newport filed a complaint on behalf of themselves "and all others similarly situated" against the Village of North Hampton, its mayor, its chief of police, its clerk, and its council members (hereinafter collectively referred to as "North Hampton"). The complaint was styled as a taxpayer action to enjoin the expenditure of village monies to enforce certain speed limits and as a declaratory judgment action to have unspecified ordinances related to the speed limits declared unconstitutional. The complaint also sought class certification and damages under Section 1983, Title 42, U.S. Code. It alleged that North Hampton had been illegally issuing speeding tickets on State Route 41 based on speed limits that were below those allowed by state law. Richard Buckley was added as a plaintiff on January 22, 1996. On October 29, 1996, the plaintiffs dismissed the action without prejudice pursuant to Civ.R. 41(A) after the trial court granted North Hampton's motion to decertify the class.
On December 2, 1996, Bowshier and Newport refiled an identical complaint except that four additional plaintiffs were named: Jimmie L. Bach, Robert W. Pour, Jerry L. Harris, and William D. Deaton. Buckley was not named in this complaint. In response, North Hampton asserted that the statute of limitations had expired on many of the claims set forth in the complaint. On May 7, 1998, the trial court found that the limitations periods set forth in R.C. 2744.04 and R.C. 2305.10 applied to the claims. Each of these statutes provide for a two-year limitation period. Thus, regarding the plaintiffs who had not been party to the prior suit, the trial court concluded that their claims were barred if they had not arisen after December 2, 1994. The savings statute applied to Bowshier's and Newport's claims. Accordingly, the trial court concluded that Bowshier's and Newport's claims were barred if they had not arisen after April 1, 1992. Bach's, Pour's, Harris's and Deaton's speeding violations all predated December 2, 1994. Newport's speeding violation predated April 1, 1992, and Bowshier had never been ticketed for speeding. The court withheld ruling on the declaratory judgment action pending "identification of a specific ordinance."
On October 1, 1999, the plaintiffs moved to file an amended complaint. The trial court sustained the plaintiffs' motion on November 16, 1999 over North Hampton's objections. The amended complaint differed from the December 2, 1996 complaint in that it added Buckley as a plaintiff and added causes of action for negligence and gross negligence, breach of fiduciary duty, fraud, and false arrest.
The parties ultimately agreed that the case would be submitted to the court for complete resolution based on a statement of stipulated facts, statements of non-stipulated facts, depositions, affidavits, and exhibits. The trial court disposed of all of the causes of action in North Hampton's favor and offered, in several instances, multiple reasons for its decision with respect to each count.
The trial court found that the plaintiffs had "failed to identify a representative party who suffered any damage within the appropriate statute of limitations for any of the causes of action set forth" in the amended complaint. With respect to the causes of action for negligence or gross negligence and breach of fiduciary duty, the trial court found that North Hampton was immune from liability pursuant to R.C. 2744.02
because the actions at issue were governmental functions, that "[n]one of the facts alleged by plaintiffs * * * rise to the level of wanton or willful misconduct which would except the individual defendants from immunity * * *," and that the plaintiffs had therefore failed to state a claim against the village. The court further found that these causes were governed by the two-year statute of limitations set forth in R.C.2744.04 and were time-barred because none of the plaintiffs had received a speeding ticket within two years of the refiled complaint or, pertaining to Bowshier and Newport, within two years of the filing of the original complaint. With respect to the claim of breach of fiduciary duty, the trial court also found that this claim was "not substantially similar to the original [1994] complaint," and therefore had not been "saved" by R.C. 2305.19.
Regarding the claim of false arrest, the trial court found that the two-year limitations period set forth in R.C. 2744.04 applied and that none of the plaintiffs had received a ticket within this period. The court also found that receipt of a traffic citation for speeding does not amount to an arrest. The court found that the cause of action for a civil rights violation pursuant to Section 1983, Title 42, U.S. Code was also governed by a two-year statute of limitations, set forth in R.C.2305.10, and was time-barred.
The trial court rejected the plaintiffs' taxpayer action because it found such action to have a one year limitations period and because the plaintiffs had not provided security for such an action as required by R.C. 733.59. The court found that the plaintiffs had also failed to properly serve the Attorney General with a copy of the complaint, a jurisdictional requirement pursuant to R.C. 2721.12(A) when one is seeking to have a municipal ordinance declared unconstitutional. Moreover, the court concluded that the plaintiffs had failed to identify the ordinance that they claimed was unconstitutional.
With respect to the fraud claim, the trial court found that this claim was "not substantially similar to the original complaint" and therefore was not "saved" by R.C. 2305.19. The court also held that the plaintiff had failed to allege fraud with sufficient specificity to satisfy the pleading requirements of Civ.R. 9(B).
The plaintiffs raise eight assignments of error on appeal. We will discuss these assignments in the order that facilitates our discussion, rather than the order in which they are presented.
 "I. THE COURT ERRED IN HOLDING THAT THE MAXIMUM TIME APPLICABLE TO PLAINTIFFS' COMPLAINT IS A TWO-YEAR STATUTE OF LIMITATIONS PURSUANT TO § 2744.04 O.R.C. OR § 2305.10 O.R.C."
The plaintiffs claim that, because they have alleged fraud in support of their taxpayer action, the four year statute of limitations for fraud applies. They claim that the trial court erred in applying the two-year limitation periods set forth in R.C. 2744.01 and R.C. 2305.10 because the issues in this case are not encompassed by R.C. 2744.01 and because R.C.2305.10 is not implicated when there is no personal or bodily injury involved.
In determining the applicable statute of limitations in a given action, the supreme court has held that the crucial consideration is the actual nature or subject matter of the cause, rather than the form in which the complaint is styled or pleaded. Hunter v. Shenango Furnace Co. (1988), 38 Ohio St.3d 235, 237. Thus, the fact that the plaintiffs characterize the village's conduct as fraud is not controlling. The plaintiffs' claims related to North Hampton's role in setting and enforcing the speed limits within the village. These are traditional governmental functions, and the plaintiffs claim that they were injured by the manner in which North Hampton performed these functions. This action is properly characterized as one for political subdivision tort liability pursuant to R.C. Chapter 2744, and the trial court did not err in applying the limitation period set forth therein at R.C. 2744.04.
R.C. 2305.10 was applicable because it related to the plaintiffs' claim, pursuant to Section 1983, Title 42, U.S. Code, that their civil rights had been violated when they were ticketed under an illegal ordinance and illegal "signage," causing them to pay fines and costs under duress. Section 1983 does not contain a statute of limitations.Wilson v. Garcia (1985), 471 U.S. 261, 266, 105 S.Ct. 1938, 1942. For purposes of "firmly defined, easily applied rules," the Supreme Court has held that the proper statute of limitations for all Section 1983 claims is the personal injury statute of limitations in the state where the claim arises, rather than basing the limitation period in each case upon the varying factual circumstances and legal theories presented. Id. at 270, 276, 105 S.Ct. at 1944, 1947. When faced with this issue, the Sixth Circuit Court of Appeals has consistently held that the appropriate statute of limitations for Section 1983 actions in Ohio is the two-year period set forth in R.C. 2305.10, Ohio's statute of limitations for bodily injury and injury to personal property. See, e.g., Browning v.Pendleton (C.A.6, 1989), 869 F.2d 989, 992; Kuhnle Brothers, Inc. v.Geauga Cty. (C.A.6, 1997), 103 F.3d 516, 519. See, also, Gaston v.Toledo (1995), 106 Ohio App.3d 66, 78.
Moreover, we are unpersuaded by the plaintiff's argument that their action sounded in fraud. Fraud requires proof of a representation that is material to the transaction, made falsely, with knowledge or reckless disregard of its falsity, with the intent of misleading another into relying on it, justifiable reliance on the misrepresentation, and damages proximately caused by the reliance. Kelley v. Ford Motor Credit Co. (2000), 137 Ohio App.3d 12, 16. The alleged "representation" in this case presumably the speed limit signs along State Route 41 is simply not the type of representation contemplated by the common law definition of fraud, nor is the issuance of a speeding ticket the kind of "transaction" contemplated therein. Further, the plaintiffs can hardly argue that they relied on the representations in question; they were only ticketed by virtue of driving in excess of the posted speed limits. For these reasons and others, the trial court properly rejected the plaintiffs' contention that their claim sounded in fraud and that the four year statute of limitations applied.
The first assignment of error is overruled.
 "II. THE COURT ERRED IN FAILING TO CONSIDER THE EFFECT OF § 2305.19 O.R.C."
The plaintiffs allege that the trial court did not consider the applicability of R.C. 2305.19, the savings statute. The plaintiffs assert that the savings statute applied to all of their claims because the 1996 complaint "was exactly the same when refiled" as the 1994 complaint and that all additional parties and causes of action contained in the amended complaint "must survive."
R.C. 2305.19 provides:
 "In an action commenced, or attempted to be commenced, * * * if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of * * * failure has expired, the plaintiff * * * may commence a new action within one year after such date."
The plaintiffs argue that R.C. 2305.19 saved all of the plaintiffs and claims in their 1996 refiled complaint and in their 1998 amended complaint, although some of the plaintiffs and causes of actions in the amended complaint had not been set forth in either of the previous complaints. The trial court found that the plaintiffs' claims for breach of fiduciary duty and fraud were not "saved" because they were "not substantially similar to the original complaint." Because we concluded under the first assignment of error that the plaintiffs' claim was not properly styled as a claim for fraud, we will not revisit that claim here. Rather, we will focus on whether the breach of fiduciary duty claim was "saved" under R.C. 2305.19.
As a general rule, a claim asserted in an amended pleading relates back to the date of the original pleading if it arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Civ.R. 15(C); Kraly v. Vannewkirk (1994),69 Ohio St.3d 627, 631. The relevant inquiry, then, for whether the 1998 amended complaint related back to the 1996 refiled complaint is whether the claim for breach of fiduciary duty arose out of the same conduct, transaction, or occurrence upon which the causes of action in the original complaint were based. Based on our review of the complaints, the conduct at issue was the same throughout. Thus, the breach of fiduciary duty claim in the amended complaint related back to the refiled complaint.
Whether this claim was saved by the savings statute depends on whether it was "substantially the same" as the claims set forth in the original complaint. See Rios v. The Grand Slam Grille (Nov. 18, 1999), Cuyahoga App. No. 75150, unreported. As noted supra, the trial court found that breach of fiduciary duty was not substantially similar to the claims in the original complaint, namely a taxpayer action, declaratory judgment action, and civil rights claim. In our view, however, both the breach of fiduciary duty claim and the taxpayer action asserted that North Hampton officials had abused the authority with which they had been entrusted by enforcing a "speed trap." In our view, these claims were substantially the same, and the savings statute did apply to the breach of fiduciary duty claim. The trial court erred in concluding otherwise. However, in light of our disposition of the third assignment of error, infra, the plaintiffs were not prejudiced by this error.
We now turn to the plaintiffs' argument that the savings statute applied to the four plaintiffs who were named for the first time in the refiled complaint because they were "members of the unnamed class." This argument lacks merit. No class was certified in the original action. In fact, the plaintiffs appear to have dismissed their original claim because the trial court refused to certify a class when the plaintiffs failed to properly identify and notify the potential members of the class. The case was not treated as a class action when it was refiled.[1] Thus, we fail to see how the savings statute could have applied to the new plaintiffs by virtue of their membership in an "unnamed" class. Moreover, by its plain language, R.C. 2305.19 applies to the plaintiff in the original action. Bach, Pour, Harris, and Deaton were not plaintiffs in the 1994 action. The plaintiffs' effort to add Buckley as a plaintiff was also improper because he was a plaintiff in the original action but did not refile his complaint within one year of the dismissal of that case, as required by R.C. 2305.19.
The second assignment of error is overruled.
 "V. THE COURT ERRED IN HOLDING THE PLAINTIFFS DID NOT PROVIDE SECURITY AS DEFINED AND REQUIRED BY § 733.59 O.R.C."
Plaintiffs contend that it "was impossible" for them to have posted any security pursuant to R.C. 733.59 because North Hampton did not request any security and the trial court did not determine what amount was required. Plaintiffs also claim that their payment of filing fees amounted to "security for the cost of the proceeding" pursuant to R.C.733.59.
The supreme court has held that "R.C. 733.59 unequivocally withholds jurisdiction to bring a statutory taxpayer action unless [the required security] is given." State ex rel. Citizens for a Better Portsmouth v.Snydor (1991), 61 Ohio St.3d 49, 54. Without such security, the action is not a proper statutory taxpayer action. Id. Moreover, Snydor
implicitly held that the payment of the initial filing fee did not satisfy the security requirement set forth at R.C. 733.59. Id.; NationalElec. Contrs. Assn., Inc. v. Mentor (1995), 108 Ohio App.3d 373, 381, citing Snydor, 61 Ohio St.3d at 54 (Douglas, J., concurring in part and dissenting in part). Thus, we reject the plaintiffs' argument that they had satisfied the requirement of R.C. 733.59 by paying the filing fee. We are also unpersuaded that the plaintiffs were unable to pay security for the cost of proceeding by virtue of the fact that neither North Hampton nor the trial court had taken the initiative in that regard. The plaintiffs should have sought to have the trial court determine the required security.
The fifth assignment of error is overruled.
 "VIII. THE COURT ERRED IN HOLDING INDIVIDUAL COUNCIL MEMBERS AND ALL DEFENDANTS ARE IMMUNE UNDER § 2744.01(C)(2)(f), § 2744.02 O.R.C., AND § 2744.03 O.R.C."
The plaintiffs argue that the officials of North Hampton were not immune from liability because willful and wanton misconduct is excepted from the general grant of immunity contained at R.C. 2744.02(A). The plaintiffs also contend that North Hampton was not immune from liability because maintaining a "speed trap" is not a governmental function.
The trial court concluded that "[n]one of the facts alleged by plaintiffs in the Second Amended Complaint rise to the level of wanton or willful misconduct which would except the individual defendants from immunity under R.C. Chapter 2744." We agree with this conclusion. Although the plaintiffs claim that officials knew for a fact that the posted speed limit was improper sometime before the speeding tickets in question were issued, their exhibits merely show that the proper speed limit had been in dispute for some time. The trial court did not rule that any of the posted speed limits were improper until 1996. This evidence fails to establish that North Hampton knowingly enforced an illegal speed limit from 1990 through 1994, as the plaintiffs suggest. Moreover, even if wanton and willful misconduct had been established, the plaintiffs' claims would fail because they were not filed within two years of their speeding violations, as required by R.C. 2744.04(A).
The plaintiffs' argument that enforcing a "speed trap" is not a governmental function is likewise without merit. R.C. 2744.01(C)(2) defines governmental functions so as to include police services, judicial and legislative functions, regulation of traffic, and the erection of traffic control devices. This definition compels the conclusion that North Hampton's implementation and enforcement of speed limits was a governmental function, notwithstanding the fact that its officials may have made errors in performing this function. The eighth assignment of error is overruled.
 "III. THE JUDGMENT IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON EACH OF THE CAUSES OF ACTION."
Under this assignment of error, the plaintiffs argue that the trial court's finding with respect to each of its causes of action was against the manifest weight of the evidence.
The plaintiffs contend that they complied with the statutory requirements for a taxpayer action because they had first requested that the village take action and it had refused to do so. The trial court dismissed this cause of action based on the statute of limitations and the fact that security had not been provided as required by statute. North Hampton makes the additional argument that the action was properly dismissed because the plaintiffs' written demand upon the village to enjoin the allegedly illegal activity was not sufficiently clear or specific.
We have already discussed the fact that posting security was a jurisdictional requirement for bringing a taxpayer action and that the plaintiffs failed to comply with this requirement. See discussion of Fifth Assignment of Error, supra. Notice to the village solicitor of the alleged illegality with a request that the solicitor seek an injunction to restrain the misapplication of funds was also a jurisdictional requirement pursuant to R.C. 733.56 and R.C. 733.59. North Hampton correctly points out that the plaintiffs' written request to the village solicitor that he seek an injunction alleged that the posted speed limits along State Route 41 in North Hampton were illegal but did not implicate any village ordinance or resolution in the illegality. This written request was inadequate to put the village on notice regarding the nature of the taxpayers' complaint, and thus the plaintiffs had not properly invoked R.C. 733.59. For these reasons, the trial court did not err in dismissing the taxpayer action.
We do express some doubt, however, about the trial court's conclusion that the taxpayer action was barred by the one year statute of limitations set forth at R.C. 733.60. R.C. 733.60 provides that "[n]o action to enjoin the performance of a contract entered into or the payment of any bonds issued by a municipal corporation shall be brought or maintained unless commenced within one year from the date of such contract or bonds." Several courts have held that R.C. 733.60 only applies to a R.C. 733.56 action for the misapplication of funds where the misapplication of funds is rooted in a contract. See Berea ex rel. Wardv. Trupo (2001), 141 Ohio App.3d 772, 776; Lordstown ex rel. Kibler v.Craigo (June 30, 1994), Trumbull App. No. 93-T-4919, unreported; ModelNeighborhood Residents Assn. v. Owens (1989), 61 Ohio Misc.2d 40, 43. See, also, Cuyahoga Falls v. Robart (1991), 58 Ohio St.3d 1, 3 (holding that the one year statute of limitations in R.C. 733.60 applies to the misapplication of funds when the misapplication of funds is the result of an illegal contract). Because the misapplication of funds alleged in this case did not relate to a contract, we question whether the one year limitation period set forth at R.C. 733.60 applied. However, we need not reach this issue in light of the other valid bases for the trial court's decision.
The plaintiffs further contend that the trial court improperly failed to address the merits of its declaratory judgment action. The trial court found that the declaratory judgment action failed to state a claim upon which relief could be granted because "no remedy was offered and no damage was incurred." The trial court also found that the plaintiffs had failed to notify the Attorney General of their challenge to the constitutionality of the ordinance as required by R.C. 2721.12(A) and Civ.R. 4(E).
R.C. 2721.12(A) provided, in pertinent part, that:
 "In any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also shall be served with a copy of the proceeding and shall be heard."
The language of R.C. 2721.12(A) is mandatory, and compliance with this provision is jurisdictional. Cicco v. Stockmaster (2000), 89 Ohio St.3d 95,100. Moreover, the Attorney General must be served when the constitutional challenge is initially pleaded to provide a reasonable amount of time for the Attorney General to evaluate the issues and determine whether to participate in the case. Id. at 99. The plaintiffs' attempt to serve the Attorney General in May 2000 failed to satisfy this requirement. Because the supreme court has held that this requirement is jurisdictional, the trial court did not err in dismissing the declaratory judgment action.
The plaintiffs also contend that the trial court's determination on their negligence or gross negligence cause of action was against the manifest weight of the evidence. As discussed supra, this claim had a two year statute of limitations pursuant to R.C. 2744.04, and none of the plaintiffs had received a speeding ticket within the prescribed two year period. The plaintiffs' claim for breach of fiduciary duty suffers from the same infirmity. The plaintiffs argue that the trial court's conclusion that they had failed to state a claim for fraud is also against the manifest weight of the evidence. We discussed the merits of the fraud claim supra, and we rely on that discussion here.
Finally, the plaintiffs argue that the evidence supported their claims of false arrest "[i]f police officers held Plaintiffs for one minute, against their will, for speed limits that were in violation of the law." This argument ignores the legal definition of an arrest and supreme court precedent holding that a brief roadside confrontation with a police officer for the purpose of issuing a citation is not an arrest. Statev. Darrah (1980), 64 Ohio St.2d 22, 26-27. See, also, State v. Barker
(1978), 53 Ohio St.2d 135, 139. The evidence did not support a finding of false arrest because it did not establish an arrest at all.
The third assignment of error is overruled.
We will address the fourth and seventh assignments of error together.
 "IV. THE COURT ERRED IN FAILING TO ESTABLISH A CLASS AS DEMANDED, OR, IN THE ALTERNATIVE, ALLOCATE IDENTIFIED PLAINTIFFS AS JOHN/JANE DOES."
 "VII. THE COURT ERRED IN HOLDING THE PLAINTIFFS HAVE FAILED TO IDENTIFY ANYONE WHO SUFFERED MONETARY DAMAGES OR ANY REPRESENTATIVE PARTY WHO SUFFERED DAMAGES FOR PURPOSES OF THIS CLASS ACTION."
The plaintiffs claim that they should have been permitted to maintain a class action because they satisfied the requirements set forth in Civ.R. 23.
Civ.R. 23(A) provides:
 "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
We disagree with the plaintiffs' claim that they had satisfied all of these requirements. Given our conclusion supra that the named plaintiffs' claims were not filed within the applicable limitation periods or suffered from other fatal defects, we are unpersuaded that they could have fairly and adequately protected the interests of the unnamed members of the reputed class, if any, whose claims were not barred. Although the fact that a statute of limitations may bar the claims of some, but not all, class members does not automatically preclude certification of the class, it is beyond dispute that a class action cannot survive without a representative party who has a viable claim upon which relief can be granted. See Hamilton v. Ohio Savings Bank (1998), 82 Ohio St.3d 67,84.
We are unimpressed by Plaintiffs' Exhibit Z, upon which the plaintiffs rely in arguing for the appropriateness of class certification. They contend that the trial court "apparently did not consider" Exhibit Z or it would have recognized that the plaintiffs had identified individuals "who [had] suffered damages for purposes of this class action." Exhibit Z lists hundreds of names of individuals who received tickets in the disputed area between 1990 and 1994. The statute of limitations would have barred the actions of a large percentage of those listed in Exhibit Z because their tickets were issued more than two years prior to the filing of the April 1994 original complaint. Furthermore, we concluded under the second assignment of error, supra, that the savings statute did not apply to those who were not named plaintiffs in the original action because the class had not been certified when that case was voluntarily dismissed.
For the foregoing reasons, the trial court did not err in failing to certify a class. The fourth and seventh assignments of error are overruled.
 "VI. THE COURT ERRED IN HOLDING THAT THE PLAINTIFFS HAD NOT IDENTIFIED AN ORDINANCE OR RESOLUTION THAT IS UNCONSTITUTIONAL."
The plaintiffs claim that the trial court erred and must not have considered the parties' stipulations in arriving at the conclusion that they had failed to identify an ordinance or resolution that was unconstitutional.
This case originated in 1994 with the filing of a complaint in which the plaintiffs alleged that North Hampton had "passed an Ordinance reducing the speed limit on State Route 41." The ordinance was not identified with specificity. The same was true of the refiled complaint in 1996. In May 1998, the trial court ruled on the applicable statute of limitations but withheld judgment on the declaratory judgment action until "an appropriate time after the identification of a specific ordinance in question." By December 1999, the plaintiffs had still failed to specifically identify the ordinance or ordinances that they claimed were unconstitutional, and North Hampton filed a Motion to Dismiss or in the Alternative for a More Definite Statement asking that the plaintiffs identify the alleged illegal ordinance(s). In response, the plaintiffs stated:
 "* * * Attached to the Second Amended Complaint as Exhibit D is [sic] all the ordinances of Defendants provided pursuant to Plaintiffs' discovery requests. If there are others, they were not provided. Those are, therefore, the ordinances at issue. * * *"
In our record, there is no Exhibit D attached to the amended complaint. The tenor of the plaintiffs' response, however, implies that they sought to have all of the village's ordinances declared unconstitutional or that they thought that a comprehensive list of the village's ordinances was responsive to the request for more specificity.
In May 2001, in their trial brief, the plaintiffs for the first time referenced Village Ordinance 93-8 and Resolution 93-8 specifically. Pursuant to Ordinance 93-8, North Hampton adopted the Ohio Revised Traffic Code as the official village ordinances for all traffic matters. The plaintiffs, however, do not contend that the Ohio Revised Traffic Code is unconstitutional. In fact, this is the law that they want North Hampton to enforce.
Pursuant to Resolution 93-8, North Hampton rescinded Resolution 93-4, which had authorized the Ohio Director of Transportation to conduct a study and to determine the "reasonable and safe prima facie speed limits on State Route 41" and had authorized the posting of signs in accordance with that determination. The plaintiffs also submitted subsequent Resolution 94-2, which reflected North Hampton's view that it had "grandfather type approval" of speed limits that were apparently lower than those determined by the Director of Transportation and requested that the Director of Transportation approve the lower speed limits as "reasonable, valid, and safe." While the plaintiffs' belated references to these resolutions shed light on their objection to North Hampton's speed limits, these resolutions do not expressly establish a speed limit that is contrary to the Revised Traffic Code. They do not establish a speed limit at all. Rather, they request the Ohio Director of Transportation to determine and to approve speed limits. As such, the trial court could have reasonably concluded that the plaintiffs had failed to identify an ordinance that was arguably contrary to Ohio law. Moreover, we note that this issue is academic in light of our conclusion under the third assignment of error that the constitutional challenge had not been properly brought because the Attorney General had not been notified.
The sixth assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
[1] The trial court did certify the class at one point, but it vacated that order a short time later when the parties "agreed" that class certification was "premature." Journal Entry, July 3, 1997.